NWOKORO & SCOLA, ESQUIRES.
44 Wall Street, Suite 1218
New York, New York 10005
Tel.: (212) 785-1060
Attorneys for plaintiffs

----------------------------X----------------------

JOSE LUIS CANEDA, LUIS        : **UNITED STATES DISTRICT COURT**
ANTONIO DIAZ, and CARMEN      : **SOUTHERN DISTRICT OF NEW YORK**
CANEDA,                       :
              Plaintiff(s)    :
                              : CASE No.:_____
      against                 :
                              : CIVIL ACTION
                              :
THE CITY OF NEW YORK,         : **COMPLAINT**
DETECTIVE JAMES GRZELAK,      :
and JOHN DOES 1 TO 10,        :
                              : **PLAINTIFF DEMANDS**
                              : TRIAL BY JURY
                              :
              Defendant(s)    :
------------------------------------X----------------------

Plaintiffs, Jose Luis Caneda, Luis Antonio Diaz, and
Carmen Caneda, by their attorneys, Nwokoro & Scola,
Esquires, complaining of the defendants, The City of New
York, Detective James Grzelak, and John Does 1 to 10,
collectively referred to as the Defendants, upon
information and belief alleges as follows:

## NATURE OF THE ACTION

1.  This is an action at law to redress the deprivation of
    rights secured to the plaintiff under color of
    statute, ordinance, regulation, custom, and or to
    redress the deprivation of rights, privileges, and
    immunities secured to the plaintiff by the Fourth,
    Fifth and Fourteenth Amendments to the Constitution of
    the United States, and by Title 42 U.S.C. § 1983 [and

§ 1985], [and arising under the law and statutes of
the State of New York].

**JURISDICTION**

2.   The jurisdiction of this Court is invoked under 28
     U.S.C. §1343(3), this being an action authorized by
     law to redress the deprivation of rights secured under
     color of state and city law, statute, ordinance,
     regulation, custom and usage of a right, privilege and
     immunity secured to the plaintiff by the Fourteenth
     Amendment to the Constitution of the United States.
     Jurisdiction of this court exists pursuant to 42 USC
     §1983 and under the Fourth, Fifth, and Fourteenth
     Amendments to the United States Constitution.

3.   All causes of action not relying exclusively on the
     aforementioned federal causes of action as a basis of
     this Court's jurisdiction are based on the Court's
     supplemental jurisdiction pursuant to 28 U.S.C. §1367
     to hear state law causes of action. The events,
     parties, transactions, and injuries that form the
     basis of plaintiff's federal claims are identical to
     the events, parties, transactions, and injuries that
     form the basis of plaintiff's claims under applicable
     State and City laws.

4.   As the deprivation of rights complained of herein
     occurred within the Southern District of New York,
     venue is proper in this district pursuant to 28 U.S.C.
     §§1391 (b) and (c).

**SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT**

5.   All conditions precedent to the filing of this action
     have been complied with. On March 4, 2016, within

ninety days after the false Arrest and other claims alleged in this complaint arose, a sworn written notice of claim, was served upon the defendant City of New York,. The plaintiffs claims were assigned the numbers 2016PI007929, 2016PI007930, and 2016PI007931, respectively, by the City of New York's Comptroller's office.

6. At least thirty days have elapsed since the service of the abovementioned notice of claim, and adjustment or payment of the claim has been neglected and/or refused.

7. This action, pursuant to New York State and City Law, has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### **PARTIES**

8. Plaintiffs reside in Bronx, New York and are residents of the State of New York. Plaintiff Carmen Caneda is the mother of plaintiffs Jose Luis Caneda and Luis Antonio Diaz. She also has another son whose name is Jose Gabriel Caneda. Jose Gabriel Caneda was involved in the incident but is not a party to this action.

9. The actions which form the underlying basis for this case all took place in the County of Bronx, and County of New York, within the jurisdiction of the Southern District of New York.

10. Defendant Detective James Grzelak, is a Detective with the New York City Police Department assigned to the 47th Precinct of the NYPD, located in Bronx, New York. He is being sued in both his individual and official capacity.

11.  Defendants John Does 1 to 10, are unknown police officers for the City of New York, acting under color of state law.  They are being sued in both their individual and official capacity.

12.  The Defendant, City of New York is a municipality in the State of New York and employs the Defendants Police Officers.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

13.  On or about May 21, 2015, at approximately 5:30 a.m., Jose Caneda, Luis Diaz and Carmen Caneda were in bed at their residence at 1722 Hunt Avenue, Apartment 1, Bronx, New York, 10462, when their began loud and continuous banging on the door and a voice said, "open the door before we fucking break it down". Jose Caneda's sister, K.A., then opened the door.

14.  As soon as the door was open, multiple police officers in uniform and in plain clothes, including Defendant Grzelak, pushed K.A. aside and moved into the apartment without showing any identification or warrant. Det. Grzelak shouted, "where is Jose Gabriel Caneda". Jose Gabriel Caneda is the brother of Jose Luis Caneda and the son of Carmen Caneda.

15.  Plaintiff Carmen Caneda told the police officers that Jose Gabriel Caneda, was not there". At this time, two police officers whose names are currently unknown, went into a bedroom occupied by Jose Luis Caneda, grabbed him, handcuffed him, dragged him to the living room and sat him down on the couch. Although Mr. Caneda was still in his underwear, defendants did not allow him to put on clothes.

16.  As Jose Luis Caneda sat on the couch in handcuffs and

underwear, dazed and confused, Detective Grzelak began to loudly interrogate him in front of his mother and sister. Defendant Grzelak stated "Where is your brother? You better tell us or its going to get real ugly. If you don't co-operate with us we are going to charge you with conspiracy. If you don't tell us we are also going to take your sister and your mother to jail". Mr. Caneda repeatedly told Detective Grzelak that he didn't know what was going on or where his brother was.

17.   Detective Grzelak then asked Mr. Caneda for his brother's telephone number. Mr. Caneda told Det. Grzelak that he did not have his brothers telephone number. Detective Grzelak then took and confiscated Mr. Caneda's cell phone, Carmen Caneda's cell phone, and K.A.'s cell phone. Detective Grzelak searched their cell phones while continuing to threaten them.

18.   Detective Grzelak and other officers then went into Jose Luis Caneda's room and searched it. They did not tell Mr. Caneda what they were looking for. Defendants flipped everything in the room upside down, including the bed. In the process, Mr. Caneda's bed was damaged. Detective Grzelak took $850.00 (eight hundred and fifty dollars) that Jose Luis Caneda had in his dresser.

19.   For about an hour while they searched the house, defendants, sat Jose Luis Caneda on the couch in his underwear and in handcuffs, while they threatened him. After about an hour, Detective Grzelak stated, "we have a search warrant coming and then we are going to search the whole house and the backyard when it comes". After approximately another hour, Detective

Grzelak stated "they got him. He was at the Aunt's house. They are bringing him here now."

20. Three hours later, another police officer, name unknown, appeared with a search warrant, and showed it to Carmen Caneda, but did not give her a copy of it. At this time, Detective Grzelak and other police officers transferred Jose Luis Caneda to a police van that was parked outside the building.

21. At approximately 9:00 a.m., plaintiff Luis Antonio Diaz, was called to the scene. When Mr. Diaz arrived, he was handcuffed and placed in the same police van where his brothers, Jose Luis Caneda, and Jose Gabriel Caneda, had been confined for the last two to three hours while the rest of the family, including Carmen Caneda, and K.A., were confined to the living room of their apartment, and the defendants continued with their search.

22. Plaintiff Luis Antonio Diaz is asthmatic and uses an asthma pump to help him breathe. As a result of his sudden arrest and confinement in the van, he had an asthmatic episode. He told Detective Grzelak and the other police officers that he was asthmatic, was now wheezing, and asked to be allowed to get and use his asthma pump, but this plea was ignored. The police officers just walked away from him.

23. Plaintiff Jose Luis Caneda was denied the use of a toilet for six hours while handcuffed and confined to the van outside his home, although he requested to be allowed the use the toiled multiple times, but Detective Grzelak and the other police officers refused.

24. After an approximate total of six hours, plaintiffs

Jose Luis Caneda and Luis Antonio Diaz, were transported to the 47th Precinct of the NYPD. At the 47th Precinct, Jose Luis Caneda, Luis Antonio Diaz, as well as Jose Gabriel Caneda, were interrogated separately, and then placed in the same holding cell.

25. After they had spent approximately two hours in the holding cell, defendants removed Luis Antonio Diaz from the cell and transported him to Central Booking while Jose Luis Caneda remained in the holding cell. Approximately two hours after he was taken to Central Booking on 161st Street, Bronx, New York, Luis Antonio Diaz was released from the Second Floor Holding area at Central Booking, and sent home without being charged with a crime. Luis Antonio Diaz was never brought before a judge.

26 Plaintiff Jose Luis Caneda was later that day taken to Manhattan Detention Center, and then taken to Rikers Island.

27. Jose Luis Caneda was detained at Rikers Island Correctional Facility for 8 days until May 29, 2015, when he was released on $15,000 bail.

28. Plaintiff Jose Luis Caneda was arraigned at a Criminal Court in New York County, and charged with Criminal Possession of a Controlled Substance in the third degree; criminal possession of a controlled substance in the fourth degree; criminal sale of marijuana in the fourth degree; and criminal possession of marijuana in the fifth degree.

29. Jose Luis Caneda was forced to retain the services of a lawyer, and attend court multiple times to defend himself from these criminal charges.

30. The decision to arrest plaintiffs Jose Luis Caneda and

Luis Antonio Diaz was objectively unreasonable under the circumstances.

31. That while plaintiffs were being detained, the defendants individually and/or collectively completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and/or offense.

32. The factual claim by the defendant officers were materially false and the defendant officers knew it to be materially false at the time they first made it, and every time thereafter when they repeated it.

33. That the defendant officers forwarded these false allegations to the New York County District Attorney ("NYCDA") in order to justify the arrests and to persuade the NYCDA to commence the plaintiff's criminal prosecution.

34. That it was as a direct result of these false allegations by Detective Grzelak and the other police officers that plaintiff Jose Luis Caneda was criminally charged.

35. That on February 18, 2016, all charges against Jose Luis Caneda stemming from the arrest of May 21, 2015, were dismissed.

36. At no time prior to or during the above events was there probable cause to arrest the plaintiffs, nor was it reasonable for the defendants to believe that probable cause existed.

37. At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the defendants against the plaintiffs.

38. The defendant officers intentionally and deliberately gave false statements and/or failed to file accurate

or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

39. As a direct and proximate result of defendants' actions, plaintiffs suffered and continue to suffer injuries, including but not limited to emotional distress, nightmares, and unwarranted severe anger bouts some or all of which may be permanent.

40. The false arrest of plaintiffs, plaintiffs wrongful imprisonment because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

41. As a direct and proximate result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

42. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

43. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including

defendants in this case, to engage in unlawful conduct.

44. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD

45. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff herein.

46. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond plaintiff's arrest.

47.  That all of the acts and omissions by the defendant
     officers described above were carried out pursuant to
     overlapping policies and practices of the municipal
     defendant in their capacities as police officers and
     officials pursuant to customs, policies, usages,
     practices, procedures and rules of the City and the
     NYPD, all under the supervision of ranking officers of
     the NYPD.

48.  The existence of the unconstitutional customs and
     policies may be inferred from repeated occurrences of
     similar wrongful conduct, as documented in a long
     history of civil actions in state and federal courts.

49.  In an Order dated November 25, 2009, in Colon v. City
     of New York, 09 CV 0008 (EDNY), the court held that:

          *Informal inquiry by the court and among the
          judges of this court, as well as knowledge of
          cases in other federal and state courts, has
          revealed anecdotal evidence of repeated,
          widespread falsification by arresting police
          officers of the New York City Police Department.
          Despite numerous inquiries by commissions and
          strong reported efforts by the present
          administration—through selection of candidates
          for the police force stressing academic and other
          qualifications, serious training to avoid
          constitutional violations, and strong
          disciplinary action within the department—there
          is some evidence of an attitude among officers
          that is sufficiently widespread to constitute a
          custom or policy by the city approving illegal
          conduct of the kind now charged.*

50.  That on more than half of the occasions where the

Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

51. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk and the inadequate level of supervision would lead to violation of individuals constitutional rights in general, and caused the violation of plaintiff's rights in particular.

52. The actions of all defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

53. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

54. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

**AS A FIRST CAUSE OF ACTION BY ALL PLAINTIFF'S AGAINST
DEFENDANTS GRZELAK AND JOHN DOES 1 TO 10: UNLAWFUL
SEARCH AND SEIZURE (HOME INVASION) IN VIOLATION OF THE
FOURTH AND FOURTEENTH AMENDMENTS**

55. Plaintiff incorporates each and every preceding allegation in this complaint as though fully set forth herein.

56. Detective Grzelak and John Does 1-10 unlawfully unlawfully entered into the home of the plaintiffs without a warrant and or without probable cause.

57. Detective Grzelak and John Does 1-10 entered into plaintiff's home without plaintiff's permission or consent.

58. Detective Grzelak and John Does 1-10 searched plaintiff's home without a warrant and or without probable cause, and without the consent or permission of the plaintiffs.

59. Detective Grzelak and John Does 1-10 seized property belonging to the plaintiff's without a warrant and without probable cause, and without the consent or permission of the plaintiffs.

60. The home invasion, searches and seizures were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention and were therefore in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

61. As a result of the unlawful search and seizure, plaintiffs Jose Luis Caneda, Carmen Caneda, and Luis Antonio Diaz have been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know them, and have been caused

to incur expenses, and have been otherwise damaged in their character and reputation.

62. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

63. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

64. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

**AS A SECOND CAUSE OF ACTION: BY PLAINTIFF'S JOSE LUIS CANEDA AND LUIS ANTONIO DIAZ AGAINST DEFENDANTS GRZELAK AND JOHN DOES 1 TO 10: FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK STATE LAW**

65. By this reference, plaintiffs incorporate each and every preceding allegation and averment in this complaint as though fully set forth herein.

66. The arrest, detention and imprisonment of plaintiffs were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

67. As a result of plaintiffs' false arrest and imprisonment, they have been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know them, was prevented from attending to their necessary affairs, and have been caused to incur legal expenses, and have

been otherwise damaged in his character and reputation.

68. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

69. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

70. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

**AS A THIRD CAUSE OF ACTION: BY JOSE LUIS CANEDA AGAINST DEFENDANT GRZELAK AND JOHN DOES 1 TO 10: MALICIOUS PROSECUTION UNDER 42 U.S.C§ 1983/NEW YORK STATE LAW**

71. By this reference, plaintiffs incorporates each and every preceding allegation and averment set forth in this complaint as though fully set forth herein.

72. The commencement and continued prosecution of the criminal judicial proceeding against Jose Luis Caneda, including the arrest, the imprisonment, and the charges against plaintiff were committed by or at the insistence of the defendant officers without probable cause or legal justification, and with malice.

73. That the defendant officers were directly involved in the initiation of criminal proceedings against the plaintiff.

74. That the defendant officers lacked probable cause to initiate criminal proceedings against the plaintiff.

75. That the defendant officers acted with malice in

initiating criminal proceedings against the plaintiff.

76. That the defendant officers were directly involved in the continuation of criminal proceedings against the plaintiff.

77. That the defendant officers lacked probable cause in continuing criminal proceedings against the plaintiff.

78. That the defendant officers acted with malice in continuing criminal proceedings against the plaintiff.

79. That the defendant officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

80. That the defendant officers misrepresented and falsified evidence to the prosecutors in the New York County District Attorney's office.

81. That the defendant officers withheld exculpatory evidence from the prosecutors in the New York County District Attorney's office.

82. That the defendant officers did not make a complete statement of facts to the prosecutors in the New York County District Attorney's office.

83. The criminal judicial proceeding initiated against plaintiff Jose Luis Caneda was dismissed on February 18, 2016, and terminated in the plaintiff's favor.

84. The arrest, imprisonment and prosecution of the plaintiff Jose Luis Caneda was malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

85. The defendant officers actions were intentional, unwarranted and in violation of the law. The defendant officers had full knowledge that the charges made before the Court against the plaintiff was false and

untrue.

86. As a consequence of the malicious prosecution by the defendant officers, plaintiffs suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against defendant officers, individually and severally.

87. In addition, the defendant officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

88. The defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

89. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages herein before stated.

**AS A FOURTH CAUSE OF ACTION: BY PLAINTIFFS JOSE LUIS CANEDA
AND LUIS ANTONIO DIAZ AGAINST DEFENDANTS GRZELAK AND JOHN
DOES 1 TO 10: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983**

90. By this reference, the plaintiffs incorporates each and every preceding allegation and averment in this complaint as though fully set forth herein.

91. Following the plaintiff's arrest, the defendant officers searched and/or strip-searched and/or caused the plaintiff and/or his property to be searched and/or strip-searched, without any individualized reasonable suspicion that he was concealing weapons or contraband.

92. As a result of the foregoing, the plaintiffs were subjected to an illegal and improper search and/or strip-search.

93. The foregoing unlawful search violated the plaintiffs' constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

94. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiffs suffered a significant loss of liberty, humiliation, mental anguish, depression, and their constitutional rights were violated. Plaintiffs hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against the defendant officers, individually and severally.

**AS A FIFTH CAUSE OF ACTION: BY JOSE LUIS CANEDA AGAINST DEFENDANTS GRZELAK AND JOHN DOES 1 TO 10: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION/FALSIFICATION OF EVIDENCE**

95. By this reference, plaintiff incorporates each and every preceding allegation and averment in this complaint as though fully set forth herein.

96. Each defendant officer created false evidence against the plaintiffs.

97. Each defendant officer forwarded false evidence and false information to the prosecutors in the New York County District Attorney's office.

98. Each defendant officer was directly involved in the initiation of criminal proceedings against the plaintiffs.

99. Each defendant officer lacked probable cause to initiate criminal proceedings against the plaintiff.

100. Each defendant officer acted with malice in initiating criminal proceedings against the plaintiff.

101. Each defendant officer was directly involved in the continuation of criminal proceedings against the plaintiffs.

102. Each defendant officer lacked probable cause in continuing criminal proceedings against the plaintiffs.

103. Each defendant officer acted with malice in continuing criminal proceedings against the plaintiff.

104. Each defendant officer misrepresented and falsified evidence throughout all phases of the criminal proceeding.

105. Each defendant officer misrepresented and falsified evidence to the prosecutors in the New York County

District Attorney's office.

106. Each defendant officer withheld exculpatory evidence from the prosecutors in the New York County District Attorney's office.

107. Each defendant officer did not make a complete statement of facts to the prosecutors in the New York County District Attorney's office.

108. By creating false evidence against the plaintiffs; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, each defendant officer violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

109. As a consequence of the defendant officers' actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against each defendant officer, individually and severally.

**AS A SIXTH CAUSE OF ACTION, BY PLAINTIFF'S JOSE LUIS CANEDA AND LUIS ANTONIO DIAZ AGAINST ALL DEFENDANTS, BATTERY IN VIOLATION OF NEW YORK LAW**

110. Defendants Grzelak and John Does 1 to 10, and the City of New York committed battery upon plaintiffs Jose Luis Caneda and Luis Antonio Diaz, by intentionally initiating offensive bodily contact with plaintiffs that is unreasonable under New York law. Defendants

Grzelak and John Does 1 to 10, did so while acting as employees of the City of New York, in the course of their employment and the scope of their authority in furtherance of the interests of their employer.

## AS A SEVENTH CAUSE OF ACTION BY ALL PLAINTIFF'S AGAINST ALL DEFENDANTS, ASSAULT IN VIOLATION OF NEW YORK LAW

111. Defendants Grzelak and John Does 1 to 10 committed an assault upon plaintiff's Carmen Caneda, Luis Antonio Diaz and Jose Luis Caneda, by undertaking physical conduct that unjustifiably placed the plaintiffs in imminent apprehension of harmful contact that is unreasonable under New York law. Defendants Grzelak and John Does 1 to 10, did so while acting as employees of the City of New York, in the course of their employment and within the scope of their authority in furtherance of the interest of their employer.

## AS AN EIGHT CAUSE OF ACTION BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS: FALSE ARREST, FALSE IMPRISONMENT, MALICIOUS PROSECUTION, AND UNLAWFUL SEARCH AND SEIZURE PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEWYORK STATE CONSTITUTION

112. By this reference, the plaintiffs incorporates each and every preceding allegation and averment in this complaint as though fully set forth herein.

113. The above-described respective assault, battery, , false arrest, unlawful search, false imprisonment, detention and malicious prosecution of the plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest, summary punishment, and subsequent

detention.

114. As a result of the above-described assault, battery, excessive force, false arrest, unlawful search, false imprisonment, detention and prosecution, the plaintiff was caused to suffer loss of liberty, serious personal injuries, humiliation, great mental and physical anguish, embarrassment and scorn among those who know him; was prevented from attending to his necessary affairs, and has been otherwise damaged in his character and reputation.

115. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the defendant officers, individually and severally.

116. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.


**AS A NINTH CAUSE OF ACTION BY ALL PLAINTIFFS AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983**

117. By this reference, plaintiffs incorporates each and every preceding allegation and averment in this complaint as though fully set forth herein.

118. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

119. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

210. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

121. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they Are/were involved in illegal vice transactions;

b. manufacturing evidence against individuals allegedly involved in illegal vice transactions;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

122. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding

officers incredible as a matter of law, that a
disturbing number of their police officers unlawfully
search and seize citizens, bring charges against
citizens with no legal basis, perjure themselves in
charging instruments and testimony, and fail to
intervene in and report the obviously illegal actions
of their fellow officers. Nevertheless, the City and
its police commissioner have allowed policies and
practices that allow the aforementioned to persist.

123. For example, the well documented failures of the
Civilian Complaint Review Board ("the CCRB"), a City
agency, to substantiate obviously meritorious citizen
complaints have gone uncorrected. The CCRB regularly
finds complainants lack credibility based on the fact
that such complainants have also brought lawsuits to
remedy the wrongs they have experienced, a practice
that often results in not substantiating the most
serious charges brought to them. In addition, the CCRB
virtually never initiates their own findings of false
statements against officers who have made false
statements to the CCRB in their own defense, nor do
they initiate findings that officers have failed to
report their fellow officers' misconduct; thus,
officers have no real incentive to come forward, or to
testify truthfully at the CCRB. The CCRB has no
enforcement mechanisms once making a finding against
an officer; it can only make recommendations to the
NYPD, once finding misconduct by an officer.

124. The NYPD, once receiving a substantiated complaint by
the CCRB, fails to adequately discipline officers for
misconduct. The NYPD Department Advocate, which is
endowed with the responsibility of following up on

substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

125. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

126. Additionally, according to a report of the New York City Bar Association issued in 2000, the City and Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

127. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

128. Furthermore, the existence of the aforesaid

unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, hasrevealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

129. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of

life, liberty, or property without due process of
law, and the right to the equal protection of the
laws, secured to him by the Fifth and Fourteenth
Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention
and/or continued detention without probable cause in
that the plaintiff was detained.

(d) The right to be free from the use of excessive
force.

130. As a result of the actions of the defendants, the
plaintiff was deprived of his rights, privileges, and
immunities secured by the United States Constitution,
in particular, the Fourth, Fifth, and Fourteenth
Amendments, in contravention of 42 USC §1983 and the
laws of New York State, and New York City without just
or legal cause when defendant City, by its employees
and/or agents unlawfully arrested and imprisoned the
plaintiff thereby depriving him of his liberty without
due process of law.

131. The defendant officers were the actual agents of the
defendant City of New York and were following the
customs, practices, ordinances and/or regulations of
the City of New York when they violated the
plaintiff's constitutional and civil rights, and the
City of New York is therefore responsible for their
acts, and liable to the plaintiff for the damages he
suffered.

132. The actual principal/agent relationship between
defendant City and the defendant officers was created
by the fact they were employees of defendant City, and
the City had the right to, and it did indeed regulate
and control the activities and conduct of the

defendant officers.

133. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.


**WHEREFORE,** plaintiffs respectfully requests judgment against the Defendants as follows:


1. For compensatory damages against all defendants in an amount to be proven at trial;
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and
4. For such other and further relief as the court deems proper.


Dated: June **23**, 2017,
          New York, New York



_____*/s/*_____
Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060